**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: January 26 2022

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 20-31055 |
| | ) | |
| Dakota M. Crites-Osmun | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 20-03040 |
| | ) | |
| Sentry Select Insurance Company | ) | JUDGE MARY ANN WHIPPLE |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| Dakota M. Crites-Osmun | ) | |
| Defendant. | ) | |

### MEMORANDUM OF DECISION AND ORDER REGARDING
### MOTION FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on Defendant's Motion for Summary Judgment [Doc. # 47] and Plaintiff's Opposition [Doc. # 50]. Defendant is the debtor in the underlying Chapter 7 case. In its complaint, Plaintiff alleges damages attributable to Defendant's conduct to Plaintiff's insured. Plaintiff contends that Defendant owes it a debt based on a state court default judgment and that it is non-dischargeable under 11 U.S.C. § 523(a)(6). Defendant seeks summary judgment on this claim.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) as a civil proceeding arising under Title 11. The proceeding has been referred to this court by the district

court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine dischargeability are core proceedings that the court may hear and determine. 28 U.S.C. § 157(b)(1) and (b)(2)(I). To the extent necessary, the parties have also consented to entry of final orders and judgments by this court. [Doc. ## 7, 11].

For the following reasons, the court will deny Defendant's motion for summary judgment.

**FACTUAL BACKGROUND**

The following facts are undisputed. In 2016, Plaintiff Sentry Select Insurance Company ("Sentry" or "Plaintiff") was the insurer, assignee, and subrogee of Bryan Ford Lincoln, Inc., a car dealership located in Bryan, Ohio. On May 9, 2016, Defendant Dakota Crites-Osmun and Jordan Cargle went to the Ford dealership and gained unauthorized entry to the premises. The dealership suffered a break-in and a fire. Law enforcement officials apprehended Crites-Osmun and Cargle near the dealership. At the time of his arrest, Crites-Osmun was a juvenile. Sentry, as the dealership's insurer, paid the dealership for the damages it sustained.

On September 5, 2019, Sentry filed a complaint against Crites-Osmun in the Court of Common Pleas in Franklin County, Ohio, for damages from the May 9, 2016, break-in and fire totaling $847,682.00. Crites-Osmun did not defend the lawsuit and on November 26, 2019, the court entered default judgment in favor of Sentry. Crites-Osmun did not appeal or seek relief from the default judgment. Defendant attached copies of what appear to be documents from the state court record to his motion. There are also some documents from the state court action attached to Sentry's complaint in this court. *See* Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(c)(3). The document that has a money damages amount in it ($847,682.00 plus interest) was prepared by an attorney for Sentry and is attached to both the complaint and the motion. [Doc. # 1, Ex. A, p. 6/9 and Doc. # 47, Ex. B. p. 15/16, respectively]. But it is not signed by any judicial officer and this court is not clear how it relates to the "It Is So Ordered" document (without a money damages amount on it) that is. There is no docket from the state court case in the record and none of the state court documents are certified as true and accurate copies.

Osmun-Crites filed his voluntary Chapter 7 petition on April 15, 2020, listing Sentry as an unsecured creditor. The court entered his Chapter 7 discharge on August 19, 2020.

Sentry timely filed this adversary action against Crites-Osmun, seeking a determination of non-dischargeability of its loss under § 523(a)(6), which excepts debts resulting from certain willful and malicious injuries by a debtor from a Chapter 7 discharge. Defendant timely filed his answer. [Doc. # 6].

The court held several pretrial conferences and at the December 17, 2020, conference scheduled

2

discovery to be completed by August 31, 2021. [Doc. # 13]. Discovery proceeded. On October 14, 2021, Defendant filed a motion to dismiss pursuant to Bankr. R. 7012(b) and Fed. R. Civ. P. 12(b)(6). [Doc. # 39]. Two more pretrials were held and it was the consensus of the parties and the court that Defendant's motion to dismiss was procedurally untimely/problematic.[1] On November 17, 2021, Defendant withdrew his pending motion to dismiss and filed the instant motion for summary judgment, which is supported by his affidavit and what appear to be copies of documents from the state court action (the state court complaint, Sentry's motion for default judgment and the aforementioned state court judgment documents).

Defendant argues that summary judgment in his favor should be granted because: (1) there is no evidence of willful and malicious conduct on his part; (2) issue preclusion negates the effect of the state default judgment; and (3) there is a failure to state a claim as there can be no vicarious liability under § 523(a)(6).

In opposition, Plaintiff first contends Defendant's motion should be denied because while styled as a motion for summary judgment, it essentially functions as a motion to dismiss and should be deemed as untimely. There is, however, no issue in that regard at this point in the proceedings because the court is treating it as a motion for summary judgment and applying summary judgment standards to decide it. Second, Plaintiff argues that under a summary judgment analysis, there are genuine issues of material fact for trial that necessitate denial of the motion. Third, Plaintiff denies that it intended or intends to use the state court default judgment for purposes of offensive issue preclusion on the liability elements of its non-dischargeability action under § 523(a)(6).

## LAW AND ANALYSIS

### Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

---

[1] Rule 12(b): **How to Present Defenses**. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
    (1) lack of subject-matter jurisdiction;
    (2) lack of personal jurisdiction;
    (3) improper venue;
    (4) insufficient process;
    (5) insufficient service of process;
    (6) failure to state a claim upon which relief can be granted; and
    (7) failure to join a party under Rule 19.
  A motion asserting any of these defense must be made *before pleading* if a responsive pleading is allowed. . . .

Bankr. R. 7012(b) and Fed. R. Civ. P. 12(b). (Emphasis added).

Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986); *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). With respect to issues on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. (*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

General averments or conclusory allegations of an affidavit do not create specific factual disputes relative to summary judgment. *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). A party opposing summary judgment must affirmatively present competent evidence that sufficiently establishes a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252. A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013) (citation omitted).

**11 U.S.C. § 523(a)(6)**

Section 523(a)(6) excepts a debt "for willful and malicious injury" by the debtor to another entity or to the property of another entity from a Chapter 7 discharge. 11 U.S.C. § 523(a)(6). To prevail under § 523(a)(6) plaintiffs must prove by a preponderance of the evidence that the injury from which the alleged debt arises was both willful and malicious. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 (6th Cir. 1999); *J & A Brelage, Inc. v. Jones (In re Jones)*, 276 B.R. 797, 801-02 (Bankr. N.D. Ohio 2001). The "willful and malicious standard is a stringent one…." *Steier v. Best (In re Best)*, 109 Fed. Appx. 1, 4 (6th Cir. 2004). The terms "willful" and "malicious" are distinct and both requirements must be met to prevail under § 523(a)(6). *South Atlanta Neurology and Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D. Ohio 2006).

Addressing the willful requirement of § 523(a)(6), the Supreme Court decided that "the (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts" and held that "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). A willful injury occurs when "(i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act." *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (citing *Markowitz*, 190 F.3d at 464).

Under § 523(a)(6), "'malicious' means in conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent." *Id.* (citing *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986)). "Stated differently, "[t]here must also be a consciousness of wrongdoing. . . It is this knowledge of wrongdoing, not the wrongfulness of the debtor's actions, that is the key to malicious under § 523(a)(6)." *Kraus Anderson Capital, Inc. v. Bradley (In re Bradley)*, 507 B.R. 192, 204 (B.A.P. 6th Cir. 2014) (quoting *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N.D. Ind. 2001)).

Debts arising out of deliberate vandalism and other torts have been deemed to satisfy § 523(a)(6)'s willful and malicious injury standard. *McCurdie v. Strozewski (In re Strozewski)*, 458 B.R. 397, 403 (Bankr. W.D. Mich. 2011), citing *Stier v. Best (In re Best)*, 109 Fed. Appx. 1, 5 (6th Cir. June 30, 2004) (unpublished opinion) (citations omitted); *National Sign & Signal v. Livingston*, 422 B.R. 645, 658 (W.D. Mich. 2009). The language of the statute also requires "injury by the debtor." § 523(a)(6). As Defendant argues, there is consensus that the injury must be by the debtor and that, absent certain circumstances, the conduct of others cannot be imputed to the debtor for purposes of § 523(a)(6). *See Greer v. Bruce (In re Bruce)*, 593 B.R. 765, 777 (Bankr. S.D. Ohio 2018): *Huffman v. Holden (In re Hughley)*, 2019 WL 2402852 *5 (Bankr. N.D. Ohio 2019).

The question on summary judgment is whether Defendant has demonstrated the absence of a genuine issue of material fact sufficient to meet his burden of going forward and to entitle him to judgment as a matter of law.

Defendant offers his affidavit for the proposition that "Debtor had no knowledge that Jordan Cargle planned to set a fire in the Ford dealership, he could not have intended either the act or the harm caused by the act." [Doc. # 47, p. 5]. Defendant further contends he was not present in the building when the fire was set and that no one testified that Defendant set the fire, participated in setting the fire or that Defendant had any knowledge that Jordan Cargle intended to set the fire. The Defendant averred the following in his affidavit:

5

1. On May 9, 2016, Jordan Cargle and I visited Bryan Ford on two occasions. On the first occasion we gained entry by breaking a window. Once inside we broke a couple of items and stole some things like coffee mugs and a ruler. We then left Bryan Ford and went to Jordan Cargle's house.

2. Jordan Cargle became scared when he could not find his wallet. He believed he might have lost it at Bryan Ford. He asked me to drive him back to Bryan Ford so he could go back in the building and look for his wallet.

3. When we arrived in the area of Bryan Ford for the second time we parked in a field about 100 yards away from the Bryan Ford building. We walked toward the building. When we got to the building Jordan Cargle entered the building. I did not enter the building. I believed that Jordan Cargle was in the building looking for his wallet.

4. When Jordan Cargle existed the Bryan Ford building we headed back to my car. While walking in the field we were confronted by the Bryan Police for breaking into the Bryan Ford building. As we were speaking with the Bryan Police one of the officers noticed an orange light coming from the front of the Bryan Ford building. As we walked toward the building it became apparent the building was on fire. That was my first knowledge of a fire. Up to that moment Jordan Cargle had not said that he planned to start a fire or that he had started a fire.

[Doc. # 47]. As Plaintiff bears the burden of proof, these parts of Defendant's affidavit discharge his burden of going forward on summary judgment to identify an absence of evidence to support Plaintiff's case.

In response, Plaintiff presents an excerpt of Jordan Cargle's deposition testimony in this case in which he addressed the same event as follows:

Q: Mr. Cargle, you said that a couple of things happened so that you and Dakota split up, at some point, when you were in the building; is that right?

A: Yeah.

Q: And then you said that you remember seeing Dakota again, when he reported to you that there was a fire; is that right?

A: Yeah.

Q: Did Dakota start the fire?

A: All I know is that I didn't start it. So and I don't really - - I'm not trying to like just put it all on him, or anything, but, I mean, if I know that I didn't do it, there's only one other person that could have done it, unless it didn't happen by itself, which, clearly, it did not.

. . . .

Q: What did Dakota say to you exactly, when he said it was time to get out of here?

> A: Okay. So I was in the showroom. And I remember that there was like this box that was sitting on someone's desk, and I was looking through it, and there was just a bunch of like cool pens and buttons, sentimental things to somebody. And I just remember picking through it, and he ran up to me, and grabbed my shoulder, and was like, "We gotta go." And I'm like, "All right, chill out man." And he's like, "No dude, we gotta go. It's on fire." And I said, "What's on fire?"
>
> And he started - - I just remember him running and then I started running, because I was panicking a little bit. And I remember crawling out the window first.

[Doc. # 50 at pp. 35-38].

Jordan Cargle's deposition testimony contradicts the facts averred in Defendant's affidavit. Cargle testified he did not start the fire and contrary to Defendant's averment, stated that it was the Defendant who first mentioned the fire. On summary judgment, the court is required to view Cargle's testimony in the light most favorable to Plaintiff. It creates a credibility dispute with Defendant's averments in his affidavit, which creates a genuine issue of material fact that precludes summary judgment for the movant. As the court is prohibited from engaging in fact-finding or evaluating credibility at the summary judgment stage, those issues are appropriate for trial.

Defendant's argument on issue preclusion is unclear, noting that "[i]f Plaintiff is suggesting Issue Preclusion, that argument must fail." [Doc. # 47, p. 5/16]. To the extent Defendant argues that Plaintiff cannot prevail on a liability determination under § 523(a)(6) on the strength of the state court judgment, it appears that the court and the parties are all on the same page. It cannot. In its opposition to the motion, Plaintiff states "[a]t no point has Sentry sought to use the Default judgment for purposes of collateral estoppel vis-à-vis proving Mr. Crites-Osmun's commission of a willful and malicious injury in the non-dischargeability action." [Doc. # 50, p. 7/38].

Issue preclusion principles apply to dischargeability proceedings in bankruptcy cases. *See Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) ("[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)."). Under 28 U.S.C. § 1738, the federal full faith and credit statute, a federal court must accord a state court judgment the same preclusive effect the judgment would have in state court. *Corzin v. Fordu (In re Fordu),* 201 F.3d 693, 703 (6th Cir. 1999). In determining whether a prior state court judgment should be given preclusive effect in a federal action, the federal court must apply the law of the state in which the prior judgment was rendered. *Id.* Thus, in this case, the court must apply Ohio issue preclusion principles.

Under Ohio law, there are four requirements for application of the doctrine of issue preclusion: (1) a final judgment on the merits after a full and fair opportunity to litigate the issue; (2) the issue was actually

7

and directly litigated in the prior action and must have been necessary to the final judgment; (3) the issue in the present suit must have been identical to the issue in the prior suit; and (4) the party against whom estoppel is sought was a party or in privity with the party to the prior action. *Sill v. Sweeney (In re Sweeney)*, 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002); *Thompson v. Wing*, 70 Ohio St.3d 176, 183 (1994). The person asserting issue preclusion carries the burden of proving its requirements by a preponderance of the evidence. *A Packaging Service Co. v. Siml (In re Siml),* 261 B.R. 419, 422 (Bankr. N.D. Ohio 2001).

Even apart from the lack of clarity about the state court judgment documents, there is no basis in the existing summary judgment record to find that the foregoing elements of issue preclusion under Ohio law have all been met, either offensively in favor of Plaintiff, and which Plaintiff disclaims in any event,[2] or defensively in favor of Defendant, which he does not appear to be arguing.

Accordingly, Defendant's motion for summary judgment is denied.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 47] be, and hereby is, **DENIED**. A further pretrial scheduling conference will be set by separate order of the court.

# # #

---

[2] Plaintiff does assert that it is entitled to rely on the amount of the judgment as the amount of the debt it is owed by Defendant, citing application of what is known as the *Rooker Feldman* doctrine, [Doc. # 50, p.7/38], which in this court's view can be nuanced, perhaps tricky and often misunderstood. Making any kind of determination one way or another about the binding nature of the damages amount is precluded by the lack of a clear record at this time as to what happened in the state court. To any extent Defendant is arguing in his motion to the contrary as to damages only, which he does not appear to be, the court lacks any basis to find that he would *not* be bound by that amount of damages and thus to grant partial summary judgment in his favor to that extent. From Plaintiff's perspective, it has not sought partial summary judgment. *Cf.* Fed. R. Civ. P. 56(g). Moreover, the court is inclined to view this more as an issue of claim preclusion or res judicata than application of the *Rooker Feldman* doctrine. *See, e.g.*, *Bruinsma v. Wigger (In re Wigger)*, 595 B.R. 236, 249 (Bankr. W.D. Mich. 2018).

8